UNITED STATES BANKRUPTCY Court
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

Kevin Roland Iott and Laura Sue Iott

           Debtors.

Case No. 09-48174-swr
Chapter 7
Hon. Steven W. Rhodes

_____/

PATRICK KING, and ROXANNE KERR,

        Plaintiffs,

vs.

KEVIN R. IOTT and LAURA IOTT,

        Defendants.

_____/

Adversary Proceeding Case No.
Hon.

Abby H. Cooper (P62317)
COOPER & RIESTERER, PLC
Attorney for Roxanne Kerr and Patrick King
7960 Grand River Suite 270
Brighton, Michigan 48114
(810) 227-3103

_____/

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF INDEBTEDNESS

NOW COME Plaintiffs, PATRICK KING, and ROXANNE KERR ("Plaintiffs"), by and through

their attorneys, COOPER & RIESTERER, PLC, by Abby H. Cooper, and for their Complaint for to

determine Dischargeability of Indebtedness, state as follows:

1. This is a Complaint to determine the Dischargeability of Indebtedness owed to the Creditors by

    the Debtors under 28 USC 523(a)(2). This Complaint is filed pursuant to rule 7001(6) of the

    Rules of Bankruptcy Procedure.

2. This Court has jurisdiction in this adversary proceeding pursuant to 28 USC 157 and 1334 since

    this proceeding arises in the above captioned Chapter 7 case currently pending in this federal

    juridical district. This adversary proceeding is a core proceeding under 28 USC 157(b)(2)(I).

3. The underlying cause of action was alleged in a Complaint filed against the Defendants, and others, in the Circuit Court for the County of Monroe, Case No. 08-24994-CZ, which was stayed pursuant to the lead bankruptcy. There was no adjudication on the merits prior to the stay in that action.

4. Plaintiffs are individuals residing at 25360 Birchwood Drive, Novi, Michigan 48374.

5. POSEY LAKE ESTATES, LLC, ("Posey Lake") is a limited liability company with its principal place of business in Monroe County, Michigan.

6. Defendant Kevin R. Iott ("Iott") is an individual residing at 5670 Sylvania Petersburg Road, Petersburg, Michigan 49270-9325.

7. Defendant Laura Iott is an individual residing at 5670 Sylvania Petersburg Road, Petersburg, Michigan 49270-9325.

8. Defendants Laura Iott and Kevin Iott are members of Posey Lake and upon information and belief have knowledge of the activities that were taken by Posey Lake.

9. On or about October 17, 2006, Plaintiffs entered into a Purchase Agreement ("the Purchase Agreement") with Posey Lake for the purchase of real estate located on Posey Lake in Lenawee County, Michigan, more particularly described in Exhibit A attached hereto ("the Property"). A copy of the Purchase Agreement is attached hereto as Exhibit B.

10. On December 8, 2006, the Property was conveyed pursuant to a Warranty Deed from Posey Lake to the Plaintiffs, a copy of which is attached hereto as Exhibit C.

11. The Purchase Agreement arose in part out of an auction that was held covering the Property on October 17, 2006.

12. In advance of and at the auction, marketing materials for the properties were distributed to all potential purchasers.

13. The marketing materials specifically referred to the properties as building sites and included

statements that the parcels would be serviced by utilities and a sewer system. A copy of the marketing brochure is attached hereto as Exhibit D.

14. The Plaintiffs purchased the Property for $95,000, with the clear intention of constructing a home on the Property.

15. Subsequent to the purchase, Plaintiffs began steps to commence construction of a home on the lot.

16. Plaintiffs were advised that they needed to obtain a DEQ permit, as certain of the property may be located within a wetland.

17. Upon inquiry of the seller and seller's agents, Plaintiffs were delivered certain reports that had been prepared for and obtained by Kevin Iott and Posey Lake prior to the sale of the Property.

18. Those reports make it clear that all of the Property is located within a wetland.

19. The report also makes clear that the soils on the Property are 100% hydric soil and may not be suitable for building.

20. Plaintiffs have also subsequent to the purchase found that no sewer will be constructed which will be available to their property.

21. On September 14, 2007, the Plaintiffs made an application to the Michigan Department of Environmental Quality ("DEQ") to obtain a permit to construct on their property.

22. On December 21, 2007, the Plaintiffs received a denial letter from the DEQ.

23. The DEQ denied the permit for several reasons, including the unavailability of a sewer system and the fact that the DEQ felt other alternatives were available for construction and specifically stated that homes could be built on other lots located in Posey Lake's Development.

24. The DEQ specifically told the Plaintiffs that Kevin Iott and Posey Lake were advised that the Property and other adjacent lots that were created were entirely within wetlands and further, given the configuration of the subdivision development, homes could not be built on all of the

lots, and particularly not on the Property purchased by the Plaintiffs.

## COUNT I- FRAUDULENT MISREPRESENTATION

25. Plaintiffs incorporate herein each and every allegation contained in Paragraphs 1 through 24, inclusive, as if the same were repeated herein.

26. The Defendants marketed the Property making specific affirmative representations regarding the buildability of the lot and the availability of sewers and utilities to the lot.

27. All Defendants, including Kevin Iott and Laura Iott knew that the representations were false when they were made.

28. The false representations referenced above were specifically concealed and not disclosed to the Plaintiffs to induce them into paying $95,000 for a lot which is worthless.

29. The Plaintiffs relied upon the numerous representations made by the Defendants and entered into the Purchase Agreement and subsequently purchased a lot based upon those representations.

30. As a result of their reliance upon those false and fraudulent representations, the Plaintiffs have suffered significant harm by paying $95,000 for a lot that cannot be utilized.

## COUNT II-SILENT FRAUD

31. Plaintiffs incorporate herein each and every allegation contained in Paragraphs 1 through 30, inclusive, as if the same were repeated herein.

32. All Defendants were in possession of specific information which was material to the Purchase Agreement and the purchase by the Plaintiffs of the Property.

33. The information known by the Defendants was not information that could be reasonably obtained by the Plaintiffs, and particularly the information regarding conversations directly between the DEQ and the Defendants.

34. The statements made about the Property were made specifically with the intention to and did

4

indeed create a false impression regarding the Property in light of the true facts known to the Defendants.

35. The Defendants had a legal duty to disclose the information known to them that created a false impression.

36. The creating of a false impression and failure to disclose the known information by the Defendants constitutes silent fraud against the Plaintiffs.

37. As a result of the Plaintiffs reliance upon the falsely created impression, they have been damaged as described herein.

## COUNT III- VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT

38. Plaintiffs incorporate herein each and every allegation contained in Paragraphs 1 through 37, inclusive, as if the same were repeated herein.

39. Posey Lake is an LLC which was created by the Defendants for the purchase and subdivision of lands in Hudson Township, Lenawee County, Michigan.

40. The sale of real estate to a consumer that does not fall under one of the specific exceptions is subject to the Michigan Consumer Protection Act.

41. The marketing of property which was known by the Defendants prior to the sale as being entirely contained within wetlands and did not have the amenities which were clearly advertised, clearly constitutes unfair and conscionable and deceptive methods, acts or practices in the conduct of trade and commerce, which is a violation of the Michigan Consumer Protection Act.

42. Specifically, the marketing and sale of the Property by the Defendants under false premises clearly 1) caused a probability of confusion or misunderstanding as to the nature and status of the property being sold; 2) was a representation that the property had characteristics and benefits that it did not have; 3) was a representation that the property was a particular quality that it was not; 4) made false and misleading statements of fact concerning the property certainly caused a

probability of confusion of the legal rights, obligations and remedies available to the party; 5) failed to reveal material facts which tended to mislead and deceive the purchaser and which could not be reasonably known to the purchaser; and 6) contained gross discrepancies between the oral representations and written agreements and the benefits actual delivered by the property.

43. All Defendants, including specifically Kevin Iott and Laura Iott, had knowledge of and participated in the fraud that resulted in the sale of the Property.

44. As a result of the numerous violations of the Michigan Consumer Protection Act the Plaintiffs have been harmed as described herein.

45. The Plaintiffs have paid $95,000 for the Property which is essentially worthless which cannot be used for any purpose whatsoever.

46. Under the Michigan Consumer Protection Act, the Plaintiffs are entitled to damages incurred plus all costs and attorney's fees incurred in connection with this action.

WHEREFORE, the Plaintiffs respectfully request that this Court find that the Defendants committed fraud, including misrepresentation, and/or silent fraud in connection with the sale of the Property; committed breaches of the Michigan Consumer Protection Act, and award the Plaintiffs all damages they have suffered including the return of funds paid in connection with the transaction, including reasonable costs and attorney's fees in connection with the fraud and/or breach of the Michigan Consumer Protection Act, and provide such additional relief as this Court deems fair and appropriate including special and exemplary damages where appropriate, and determine that this award is non-dischargeable in the instant bankruptcy proceeding pursuant to 28 USC 523 (a)(2).

Date: July 9, 2009

Respectfully submitted,

Abby H. Cooper (P62317)
Attorney for Plaintiffs

UNITED STATES BANKRUPTCY Court
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

Kevin Roland Iott and Laura Sue Iott

Case No. 09-48174-swr
Chapter 7
Hon. Steven W. Rhodes

Debtors.

_____/

PATRICK KING, and ROXANNE KERR,

Plaintiffs,

Adversary Proceeding Case No.
Hon.

vs.

KEVIN R. IOTT and LAURA IOTT,

Defendants.

_____/

Catherine A. Riesterer (P40914)
COOPER & RIESTERER, PLC
Attorney for Roxanne Kerr and Patrick King
7960 Grand River Suite 270
Brighton, Michigan 48114
(810) 227-3103

_____/

## **EXHIBIT LIST**

Exhibit A- Legal Description of the Property

Exhibit B- Purchase Agreement

Exhibit C- Warranty Deed from Posey Lake to the Plaintiffs

Exhibit D- Marketing brochure for Posey Lake Estates

# Exhibit A

Land located in the Township of Hudson, Lenawee County, State of Michigan, described as follows:

All that part of the Northeast 1/4 of the Southwest 1/4 and part of the Southeast 1/4 of the Northwest fractional 1/4 of Section 4, Town 7 South, Range 1 East, further described as beginning 1,328.20 feet South 89° 59' 59" West along the South line of said Section 4 and 2,551.03 feet North 01° 07' 33" East along the West line of the East 1/2 of the Southwest 1/4 of Section 4, aforesaid, and 300.40 feet North 89° 43' 20" East from the Southwest corner of said Section 4; thence North 00° 50' 19" East 425.97 feet to an intermediate traverse line on the shore of Posey Lake; thence South 45° 38' 22" East 18.97 feet and South 76° 39' 56" East 88.33 feet; thence leaving said intermediate traverse line South 00° 50' 19" West 391.84 feet; thence South 89° 43' 20" West 100.02 feet to the point of beginning;

SUBJECT TO AND TOGETHER WITH the right to use but not the exclusive right thereof a 66 foot wide easement for ingress and egress purposes and the installation and maintnance of public utilities described by its centerline as beginning on the South line of Section 4 aforesaid, 1,303.50 feet North 89° 59' 59" East from the Southwest corner of said Section 4; thence North 01° 07' 20" East 1,334.05 feet; thence North 02° 55' 40" East 647.16 feet; thence North 01° 32' 34" West 145.55 feet to a point hereinafter known as "Point A"; thence continuing North 01° 32' 34" West 62.17 feet; thence North 44° 49' 32" East 115.47 feet; thence 37.71 feet along a 45.00 foot radius curve to the left having a chord bearing and distance of North 20° 49' 16" East 36.61 feet; thence North 03° 11' 00" West 280.89 feet ot a point known hereafter as "Point B";
ALSO beginning as said "Point A" thence North 89° 12' 00" East 1,325.55 feet to the point of ending;
ALSO beginning at "Point B" thence North 82° 28' 23" East 216.29 feet; thence North 75° 17' 53" East 92.69 feet; thence North 34° 21' 19" East 175.33 feet to a point known as "Point D";
ALSO beginning at "Point D" thence 55° 38' 41" West 33.00 feet; thence North 00° 50' 19" East 65.68 feet; thence South 89° 09' 41" East 70.65 feet; thence South 00° 50' 19" West 78.53 feet; thence South 34° 21' 19" West 28.30 feet; thence North 55° 38' 41" West 33.00 feet to said "Point D";
ALSO beginning at said "Point B" thence North 78° 13' 29" West 165.79 feet; thence North 87° 22' 20" West 77.97 feet; thence South 73° 13' 52" West 59.94 feet; thence South 41° 44' 01" West 160.04 feet; thence South 56° 05' 27" West 69.39 feet; thence South 63° 27' 30" West 75.18 feet; thence South 68° 52' 15" West 108.53 feet to a point known hereinafter as "Point C";
ALSO beginning 33.00 feet South 21° 07' 45" East from said "Point C" thence South 21° 07' 45" East 17.24 feet; thence North 70° 55' 49" East 71.89 feet; thence North 01° 07' 33" East 21.42 feet; thence South 68° 52' 15" West 79.95 feet to the point of beginning.

44571

5883856
Page: 2 of 2
01/10/2007 03:59P
L-2336 P-167

Register of Deeds, Lenawee Co. D.WR 17.00

*End of Rider A*

# Exhibit B



# AGREEMENT TO PURCHASE REAL ESTATE

Date **October 17 2006** . I/We hereby offer to purchase for the sum of $_____, in accordance with paragraph #1 below, the real estate in the (City/Twp.) of **Hudson**_____, County of **Lenawee**_____, State of Michigan, commonly known as **Tract (s)**_____ or described as_____. This Agreement to Purchase is made subject to the following terms and conditions:

1. **PURCHASE PRICE.** The entire purchase price shall be paid in cash at closing.
2. **TAXES AND ASSESSMENTS "AS PER EXHIBIT A"**

3. **SURVEY.** _____ "AS PER EXHIBIT A"

4. **TITLE.** Seller shall furnish at Seller's expense a Policy of Owner's Title Insurance in the amount of the Purchase Price, insuring to purchaser marketable title to the real estate as of a date after the date hereof.
5. **CLOSING.** This transaction shall be closed **"AS PER EXHIBIT A"**_____. Upon payment of the Purchase Price, Seller shall deliver a properly executed **warranty**____ Deed, conveying the real estate, improvements and fixtures in substantially their present condition, usual wear and tear excepted, and if Seller is unable to do so, Purchaser shall have the option to revoke this Agreement and have the Earnest Money returned, without delay. Seller assumes risk of loss and damage until closing. Issues of marketability shall be resolved by reference to the Standards of Marketability as per American Land Title Association.
6. **POSSESSION** shall be delivered **"AS PER EXHIBIT A"**. Purchaser shall assume all risk of loss or damage not caused by acts or negligence of the Seller from the date of closing.
7. **IMPROVEMENTS AND FIXTURES.** This Agreement to Purchase includes all improvements and permanent fixtures used in connection with said real estate, including, but not necessarily limited to the following: all electrical, gas, central heating, central air conditioning, and plumbing fixtures, including water softener (except rental units), built-in appliances, drapery hardware, attached carpeting, radio or television antenna, garage door openers, and _____. If any, now in or on the property, the costs of which shall be fully paid and shall be free of liens. Propane tanks are not included.
8. **WARRANTIES.** Purchaser acknowledges that an inspection was made of the real estate and personal property, if any, or the Purchaser is familiar therewith to the extent desired, and with respect to this contract, is satisfied in all respects with the condition of the real estate and personal property, if any, and with the availability of all necessary utilities and access. Purchaser understands that Seller makes no representations as to the condition, quality or serviceability of the real estate and personal property, if any, for any particular purpose. Purchaser understands that by entering into this contract Purchaser is agreeing to accept the real estate and personal property, if any, "AS IS", "WHERE IS". Purchaser is purchasing the property subject to any recorded easements, leases, covenants and restrictions of record.
9. **BINDING AGREEMENT.** All the terms and conditions are as stated herein, there being no verbal agreements. If this Agreement is accepted by the Seller, it shall be an Agreement binding on and inuring to the benefit of both Purchaser and Seller, their heirs, assigns and personal representatives.
10. **EARNEST MONEY.** Purchaser hereby deposits $_____ as Earnest Money to be held by THE BROKERAGE LAND CO. as part of the purchase price. If this offer is not accepted **within 48 hours** or the conditions specified cannot be met, the Earnest Money is to be returned to the Purchaser. In the event Purchaser defaults in the performance of this Agreement all deposits hereunder may be forfeited as liquidated damages at Seller's election or Seller may retain such deposits as part payment of the purchase price and pursue his legal remedies against Purchaser. Should Seller default in the performance of this Agreement, Purchaser may receive an immediate refund of all Earnest Money and take such actions for damages against the Seller as may be permitted by law.
11. This purchase agreement is subject to the Bidding Procedures and Terms of Sale as per Exhibit "A" which is attached and made a part of this Agreement.
12. **OTHER TERMS AND CONDITIONS.** **"AS PER EXHIBIT A"**
_____
_____
_____
_____

13. **THIS AGREEMENT IS SOLELY BETWEEN PURCHASER AND SELLER. THE AUCTIONEER(S)/BROKER(S) AND SALES AGENT(S) ARE NOT LIABLE FOR THE PERFORMANCE OF THE PURCHASER OR SELLER UNDER THIS AGREEMENT AND SHALL NOT BE LIABLE FOR ANY EXISTING OR ARISING DEFECTS OR DEFICIENCIES IN THE REAL ESTATE, IMPROVEMENT, OR EQUIPMENT THEREON. SCHRADER/BROKERAGE LAND COMPANY AND THEIR AGENTS ARE EXCLUSIVELY AGENTS FOR THE SELLER.**
14. **SELLER/PURCHASER HAVE BEEN ADVISED TO SEEK LEGAL COUNSEL TO 1) INSURE THE DETAILS OF THE AGREEMENT TO PURCHASE REAL ESTATE ARE BEING ADHERED TO AND 2) THAT TITLE IS MARKETABLE.**

_____    _____    _____
WITNESS      PURCHASER      PURCHASER

**ADDRESS:**_____
Earnest Money deposit of $_____ received. Agent:_____    **PHONE:**_____
ACCEPTANCE BY SELLER: The above offer is hereby accepted    **October** _____ **17.** 200**6**
We also authorize our said agent to hold all money deposits in escrow until final closing of this transaction. Dated this ____ day of _**October**___, 200**6**.    **POSEY LAKE ESTATES LLC**

_____    SELLER BY: **KEVIN R IOTT**    SELLER
WITNESS

**ADDRESS: 5670 Sylvania Petersburg Rd Petersburg,MI** **PHONE:**_____
DEED CONVEYANCE AS FOLLOWS:      **49270**

_____
**NAME**

**NAME**
(LANDPUR.DOC)

# EXHIBIT "A"

THE BROKERAGE LAND CO./SCHRADER AUCTION CO., INC., welcomes you to bid YOUR price on the real estate offered at this auction.

## BIDDING PROCEDURES TO KEEP IN MIND:

1. All bidding is open to the public. You will need to raise your hand or call out your bid as the auctioneer asks for bids. This is a one time opportunity. Watch the auctioneer and his bid assistants. They will take your bid and will assist you with any questions.

2. Bidding will remain open until the close of the auction. You may bid on any tract, or any combination of tracts within 1 through 5 or 6 through 21. Tract 17 is a swing tract and must be purchased in combination with an adjoining tract(s) or by an adjacent landowner. Bids on tracts, tract combinations and the total property may compete. Bidding will be on a lump sum basis.

3. Your bidding is NOT conditional upon financing, so be sure you have arranged financing, if needed, and are capable of paying cash at closing.

4. Minimum bid increments are at the discretion of the auctioneer.

5. The Seller or Seller's representative is present and we anticipate that the best bids at the close of the auction will be accepted. However, all bids are subject to the Sellers' acceptance or rejection.

## TERMS OF SALE OUTLINED:

1. 10% down payment due at close of auction. The down payment may be in the form of cash, cashier's check, or a personal or corporate check immediately negotiable.

2. Balance of purchase price is due at close of sale, which shall take place 30 days after auction day, or as soon thereafter as applicable closing documents are completed.

3. Seller will provide surveys for Tracts 1 through 17. At Seller's option, the Seller shall provide a new survey for Tracts 18 through 21 where there is no existing legal description or where new boundaries are created by tract divisions. If a new survey is determined to be necessary by the Seller, the cost of the survey is to be shared 50:50 between Buyer(s) and Seller. Any purchase made in combination will receive a perimeter survey only.

4. Sellers shall be responsible for taxes and assessments billed through the Summer 2006 tax billing. Taxes and assessments billed after the Summer 206 billing shall be paid by the Purchaser(s).

5. Possession on all tracts will be given at closing..

6. A Buyer's premium in the amount of 3% of the successful bid amount will be due from the Buyer(s) at close of sale.

7. Sale of the property is subject to any and all easements and restrictions of record. All Tracts shall be subject to an easement for ingress and egress and installation of and maintenance of utilities. All tracts shall be subject to a private road maintenance agreement. Homes built on tracts 1 through 15 must be a minimum of 1,500 square feet of living space and have a minimum roof pitch of 4/12.

8. Buyer(s) shall receive 100% of the mineral, oil and gas rights owned by the Sellers.

9. Sellers and Buyer(s) will share in the closing fee charged by the Title Company involved on a 50:50 basis.

10. All acreages, dimensions and boundaries are estimated and have been estimated based on current legal descriptions and surveys.

11. Sale of property which involves newly created parcels is subject to approval (per Section 108 of Michigan Land Division Act) from the Township. Proposed land divisions have been conceptually approved by the Township. Upon completion of the auction, which will determine any successful combination bids, final surveyed descriptions will be submitted to the Townships for the completion of their review and action process.

12. As required under section 109 of the land division act, ACT NO. 288 of the Public Acts of 1967, for property located in rural areas, the Warranty Deed will include the following language: **"This property may be located within the vicinity of farmland or a farm operation. Generally accepted agricultural and management practices which may generate noise, dust, odors and other associated conditions may be used and are protected by the Michigan Right to Farm Act."**

13. Your bids are based solely upon your inspection. Sellers make no representation or warranty as to the condition of any of the tracts or improvements upon them. Sellers and Sellers' agents make no representations or warranties as to zoning, classification, the location or availability of utilities, or the ability of a Buyer(s) to obtain a permit for building or driveway construction, or for a well or on-site sewage disposal system. Sellers make no representations or warranties as to the condition of the land, and all sales will be on an "AS IS, WHERE IS" basis.

14. The sale of Tracts 12, 13, 14, 15 and 16 are subject to formal approval of the application for dredging and expansion of the channel. Estimated cost of channel expansion will be escrowed from Sellers at closing.

15. Tracts 16 through 21 are subject to a CRP agreement that expires in 2008.

16. THE BROKERAGE LAND CO./SCHRADER AUCTION CO., INC., and their representatives are Exclusive Agents of the Sellers.

17. The terms and covenants of the purchase agreement, including these additional terms, shall survive closing and shall bind and the benefits shall inure to the heirs, successors, representatives and assigns of the parties.

BY: _Robert King_
Buyer

BY: _____ DATE: October 17, 2006
Buyer

BY: _Kevin R. Lott_
Seller

BY: _____ DATE: October 17, 2006
Seller

# Exhibit C



LENAWEE COUNTY TREASURER
TAX CERTIFICATE NO. 11-07

JAN 1 0 2007

MARILYN J. WOODS



Lenawee Co., MI ROD
Victoria J. Daniels
OFFICIAL SEAL

L-2338 P-187



5083856
Page: 1 of 2
01/10/2007 03:59P
L-2338 P-187

Register of Deeds, Lenawee Co.   D.MR   17.00



STATE OF **MICHIGAN**
Lenawee
01/10/2007
92676

★ REAL ESTATE ★
★ TRANSFER TAX ★
$104.50 -C ★
$712.50 -S ★
96329 ★

## WARRANTY DEED

The GRANTOR(S), Posey Lake Estates, LLC, a Michigan Limited Liability Company, whose address is 5670 Sylvania Petersburg, Rd., Petersburg, MI 49270, convey(s) and warrant(s) to Patrick King and Roxanne Kerr, as joint tenants with full rights of survivorship, whose address is 25360 Birchwood Dr., Novi, MI 48374, the following described premises situated in the Township of Hudson, County of Lenawee, State of Michigan;

### SEE ATTACHED LEGAL DESCRIPTION:

Reference:

(Source of Legal Description: American Title Insurance Co. Commitment No. 44571, dated November 27, 2006)

**NOTE:** This property may be located within the vicinity of farmland or a farm operation. Generally accepted agricultural and management practices which may generate noise, dust, odors and other associated conditions may be used and are protected by the Michigan Right to Farm Act.

The grantor grants to the grantee the right to make — 0 — division(s) under Section 108 of the Land Division Act, Act No. 288 of Public Acts of 1967. Draftor of deed made no inquiry as to allowable number of lot divisions and the parties waive any claim against Draftor related to the number of allowable division.

for the sum of **NINETY FIVE THOUSAND ($95,000.00) DOLLARS**, subject to easements and building and use restrictions of record.

Dated this 8th day of December, 2006

STATE OF MICHIGAN )
               ) SS.
County of Lenawee )

The foregoing instrument was acknowledged before me on this 8th day of December, 2006 by Posey Lake Estates, LLC, a Michigan Limited Liability Company, by _____
   **Kevin R. Iott** its **Member**

Beth A. Fetzer
Notary Public, Lenawee County, Michigan
My Commission Ex: 12/21/2008

Signed by:
Posey Lake Estates, LLC,
a Michigan Limited Liability Company

By _____ Kevin R. Iott

Its **Member**

Tax ID No. HD0-104-3360-00     **Grantee**
Return deed after recording to:_____

Deed rendered without opinion by:
**Phillip A. Schaedler**
Attorney at Law, 147 N. Main St.
Adrian, Mi. 49221

✓ ATCL

17,

HD0-104-3300-00

Land located in the Township of Hudson, Lenawee County, State of Michigan, described as follows:

All that part of the Northeast 1/4 of the Southwest 1/4 and part of the Southeast 1/4 of the Northwest fractional 1/4 of Section 4, Town 7 South, Range 1 East, further described as beginning 1,328.20 feet South 89° 59' 59" West along the South line of said Section 4 and 2,551.03 feet North 01° 07' 33" East along the West line of the East 1/2 of the Southwest 1/4 of Section 4, aforesaid, and 300.40 feet North 89° 43' 20" East from the Southwest corner of said Section 4; thence North 00° 50' 19" East 425.97 feet to an intermediate traverse line on the shore of Posey Lake; thence South 45° 38' 22" East 18.97 feet and South 76° 39' 56" East 88.33 feet; thence leaving said intermediate traverse line South 00° 50' 19" West 391.84 feet; thence South 89° 43' 20" West 100.02 feet to the point of beginning;

SUBJECT TO AND TOGETHER WITH the right to use but not the exclusive right thereof a 66 foot wide easement for ingress and egress purposes and the installation and maintnance of public utilities described by its centerline as beginning on the South line of Section 4 aforesaid, 1,303.50 feet North 89° 59' 59" East from the Southwest corner of said Section 4; thence North 01° 07' 20" East 1,334.05 feet; thence North 02° 55' 40" East 647.16 feet; thence North 01° 32' 34" West 145.55 feet to a point hereinafter known as "Point A"; thence continuing North 01° 32' 34" West 62.17 feet; thence North 44° 49' 32" East 115.47 feet; thence 37.71 feet along a 45.00 foot radius curve to the left having a chord bearing and distance of North 20° 49' 16" East 36.61 feet; thence North 03° 11' 00" West 280.89 feet ot a point known hereafter as "Point B";
ALSO beginning as said "Point A" thence North 89° 12' 00" East 1,325.55 feet to the point of ending;
ALSO beginning at "Point B" thence North 82° 28' 23" East 216.29 feet; thence North 75° 17' 53" East 92.69 feet; thence North 34° 21' 19" East 175.33 feet to a point known as "Point D";
ALSO beginning at "Point D" thence 55° 38' 41" West 33.00 feet; thence North 00° 50' 19" East 65.68 feet; thence South 89° 09' 41" East 70.65 feet; thence South 00° 50' 19" West 78.53 feet; thence South 34° 21' 19" West 28.30 feet; thence North 55° 38' 41" West 33.00 feet to said "Point D";
ALSO beginning at said "Point B" thence North 78° 13' 29" West 165.79 feet; thence North 87° 22' 20" West 77.97 feet; thence South 73° 13' 52" West 59.94 feet; thence South 41° 44' 01" West 160.04 feet; thence South 56° 05' 27" West 69.39 feet; thence South 63° 27' 30" West 75.18 feet; thence South 68° 52' 15" West 108.53 feet to a point known hereinafter as "Point C";
ALSO beginning 33.00 feet South 21° 07' 45" East from said "Point C" thence South 21° 07' 45" East 17.24 feet; thence North 70° 55' 49" East 71.89 feet; thence North 01° 07' 33" East 21.42 feet; thence South 68° 52' 15" West 79.95 feet to the point of beginning.

44571



Register of Deeds, Lenawee Co. D.MR    17.00

# Exhibit D



# Posey Lake

## 21 Tracts (16 Waterfront)

**Tracts 1 through 5 to sell ABSOLUTE regardless of price!**

### Hudson Township • Lenawee County, MI

- 11 Lakefront lots, each with 100+ feet of lake frontage
- 5 Channel front lots with access to Posey Lake
- 5 Rural building sites (5 acres each)
- Sewer available for all water front lots except Tract 16
- Private road
- 7 Miles north of OH/MI Line & 4 miles East of US 127

## AUCTION: Tuesday October 17, 2006 at 7pm

Auction at Hudson High School (Cafeteria)
771 N. Maple Grove St., Hudson, MI

**Owners**
Family Trust & John Bobon Trust (Tracts 1-5)
sey Lake Estates (Tracts 6 -21)

**Sale Managers**
Simmons & Dick Dobbins

## THE BROKERAGE LAND COMPANY

### SCHRADER
*Real Estate & Auction Co., Inc.*

## 800-837-0010
www.brokeragelandco.com



*Posey Lake*

You may bid on any tract or any combination of Tracts 1-5 and 6-21







### Tracts 1-11

Lake front tracts with a minimum of 100 feet of frontage ranging in size from .90 to 1.82 acres and from heavily wooded to park like settings and served by sewer.
**Tracts 1-5 will be sold absolute, regardless of price!**

### Tracts 12-15

Channel front tracts, rolling terrain excellent for walk out basements and views of the lake and served by sewer.

### Tract 16

40 acres with road frontage on Beecher Road with frontage on the channel and Posey Lake.

### Tract 17

13.25 acre swing tract that would make a great combination with Tracts 12 through 15. This tract must be purchased by a currently adjacent landowner or in combination with any/all of tracts 12-16.

### Tracts 18-21

Approximately 5 acre potential building sites. Gently rolling land.

| Tract | Waterfront | Acres |
|-------|-----------|-------|
| 1 | 100' | 0.91 |
| 2 | 100' | 0.91 |
| 3 | 182' | 1.82 |
| 4 | 100' | 0.91 |
| 5 | 100' | 0.91 |
| 6 | 154' | 0.92 |
| 7 | 191' | 1.24 |
| 8 | 158' | 1.10 |
| 9 | 107' | 0.93 |
| 10 | 101' | 0.90 |
| 11 | 613' | 0.99 |
| 12 | 75' | 1.04 |
| 13 | 100' | .91 |
| 14 | 100' | .91 |
| 15 | 100' | .91 |
| 16 | 500' | 40.0 |
| 17 | -0- | 13.2 |
| 18 | -0- | 5.0 |
| 19 | -0- | 5.0 |
| 20 | -0- | 5.0 |
| 21 | -0- | 5.0 |

**Note:** Documentation relating to building restrictions. sewer and lot dimensions will be available as handouts at information dates and upon request.

*Don't miss this rare opportunity to buy lakefront property not previously available on Private Posey Lake!*

### Information Dates (on site on Tract #7)
**Sunday, September 24, 1-3pm**
**Wednesday, October 4, 5-7pm**
Walkover inspections are welcomed at any time.



### rections to the Property
)m the intersection of M-34 and US-127, go North on US-127
niles to Beecher Road. Go East on Beecher Road 4 miles to
)00 Beecher Road and look for tract signs.

### rections to the Auction Site
idson High School (Cafeteria)
1 N. Maple Grove St., Hudson, MI
)m the intersection of M-34 and US-127, go east on M-34
mile to Maple Grove St., then North on N. Maple Grove St.
mile to High School. Please follow Brokerage Land 07/09/09
ihrader signs to appropriate entrance.



in individual tracts and in combination of tracts within tracts 1 through 5 and 6 through 21. Tract 17 is a swing tract and must be purchased in combination with an adjacent tract or by an adjoining land owner. There will be open bidding on all tracts and combinations during the auction as determined by the Auctioneer. The final bids, resulting with the highest sale price will be presented to the Sellers

**DOWN PAYMENT:** 10% of the accepted bid as down payment on the day of the auction with the balance in cash at closing. The down payment may be made in the form of cash, cashier's check, personal check or corporate check. Your bidding is not conditional upon financing, so be sure you have arranged financing, if needed, and are capable of paying cash at closing.

**APPROVAL OF BID PRICES:** All successful bidders will be required to enter into purchase agreements at the auction site immediately following the close of the auction. All final bid prices are subject to the Seller's acceptance or rejection.

**DEED:** Seller shall provide a Warranty Deed(s)

**EVIDENCE OF TITLE:** Seller shall provide an Owners Title Insurance Policy in the amount of the purchase price.

**CLOSING:** The balance of the purchase price is due at closing, which will take place 30 days after auction day, or as soon thereafter as applicable closing documents are completed. Seller and Buyer(s) will share in the closing cost charged by the Title Company involved on a 50 50 basis.

**POSSESSION:** Possession will be granted at closing for all tracts.

**REAL ESTATE TAXES:** Seller shall be responsible for taxes and assessments billed through 2006 Summer tax billing and Buyer(s) for taxes and assessments billed after the 2006 Summer tax billing.

**DEED RESTRICTIONS:** Tracts 1 through 15 shall be subject to deed restrictions, which include a minimum of 1,500 square feet of living space and a minimum of a 4:12 pitch roof.

**ACREAGE:** Acreages and dimensions are approximate and have been estimated on current legal descriptions & survey/plat drawings.

**EASEMENTS:** Sale is subject to any and all easements and restrictions of record. All tracts shall be subject to an easement for a private road for ingress and egress and installation of and maintenance of utilities. All tracts shall be subject to a private road maintenance agreement.

**SURVEY:** The Sellers will provide surveys for tracts 1 through 15. At Sellers' option, the Sellers shall provide a new survey for Tracts 16 through 21 where there is no existing legal description or where new boundaries are created by tract divisions. If a new survey is determined to be necessary by the Sellers, the cost of the survey is to be shared 50 50 between Buyer(s) and Sellers. Any purchase made in combination will receive a perimeter survey only.

**BUYER'S PREMIUM:** Buyer's Premium of 3% of successful bid(s) will be due from the Buyer(s) at closing. Please take this into consideration when bidding.

**AGENCY:** Brokerage Land Company/Schrader and its representatives are Exclusive Agents of the Seller.

**DISCLAIMER AND ABSENCE OF WARRANTIES:** All information contained in this brochure and all related materials are subject to the Terms and Conditions outlined in the Purchase Agreement. The property is being sold on an "AS IS, WHERE IS" basis, and no warranty or representation, either expressed or implied, concerning the property is made by the Seller or the Auction Company. All sketches and dimensions in the brochure are approximate. Each potential buyer is responsible for conducting his/her own independent inspections, investigations, inquiries and due diligence concerning the property. The information contained in this brochure is subject to verification by all parties relying on it. No liability for its accuracy, errors or omissions is assumed by the Seller or the Auction Company. Conduct of the auction and increments of bidding are at the direction and discretion of the auctioneer. The Seller and Selling Agents reserve the right to preclude any person from bidding if there is any question as to the person's credentials, fitness, etc. All decisions of the auctioneer are final.

**NEW DATA, CORRECTIONS AND CHANGES:** Please arrive prior to scheduled auction time to inspect any changes, corrections, or additions to the property information.

ANY ANNOUNCEMENTS MADE FROM THE AUCTION PODIUM DURING THE TIME OF THE SALE WILL TAKE PRECEDENCE OVER ANY PREVIOUSLY PRINTED MATERIAL, OR ANY OTHER ORAL STATEMENTS MADE.



# Posey Lake

**21 TRACTS**
**[16 Waterfront]**

U.S. POSTAGE
PAID
Permit #1
Minster, OH
45865

## THE BROKERAGE LAND COMPANY

**SCHRADER** Real Estate & Auction Co., Inc.

605 South Jackson Street
Jackson, MI 49203

# 800-837-0010

www.brokeragelandco.com

### OCTOBER 17, 2006

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

Hudson Township
Lenawee County, MI

Tracts ranging from
.90 acres to 40 acres

Tracts 1 through 5 to sell

## ABSOLUTE,
regardless of price!

## Auction

**Tues, October 17, 2006 at 7pm**

Hudson Township
Lenawee County, MI

**150-acre all sports lake**

**AUCTION: Tuesday, October 17, 2006 at 7pm**